IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § CASE NO. SA-13-CR-276(1)-XR |
| | § |
| VERSUS | § SAN ANTONIO, TEXAS |
| | § MONDAY, APRIL 15, 2013 |
| ANDRES SANCHEZ | § 10:08 A.M. TO 10:32 A.M. |

DETENTION HEARING

BEFORE THE HONORABLE PAMELA A. MATHY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: SEE NEXT PAGE

For the Defendant: SEE NEXT PAGE

Court Recorder: FTR Gold

PREPARED BY:

WORD FOR WORD
163 South Hall Drive
Montgomery, Texas 77316
(936) 228-3500 (office)

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For the Government: | U.S. Attorney's Office<br>SAM PONDER, AUSA<br>601 N.W. Loop 410, Suite 600<br>San Antonio, Texas 78216 |
| For the Defendant: | JAMES. L. RODRIGUEZ<br>1507 N. St. Mary's Street<br>San Antonio, Texas 78215 |

Also Present:

| | |
|---|---|
| For Probation Office: | Amanda Cevallos |

INDEX


| WITNESSES: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Mark Clancy | | | | |
| by Mr. Ponder | 7 | | --- | |

| EXHIBITS: | Marked | Offered | Admitted |
|---|---|---|---|
| (None) | --- | --- | --- |

| ARGUMENTS: | Page |
|---|---|
| By Mr. Ponder | 18 |
| By Mr. Rodriguez | 20 |

| RULING: | |
|---|---|
| Detention, no bond set | 20 |

SAN ANTONIO, TEXAS; MONDAY, APRIL 15, 2013; 10:08 A.M.

THE COURT: We're on the record again. United States of America versus Andres Sanchez, SA-12-CR-276(1).

Announcements, please.

MR. PONDER: Sam Ponder for David Shearer, for the United States.

THE COURT: Good morning, sir.

MR. PONDER: Good morning.

MR. RODRIGUEZ: Jim Rodriguez on behalf of the defendant, Mr. Sanchez. We're present and ready, Your Honor.

THE COURT: All right, sir. Good morning, sir.

Mr. Sanchez, good morning.

DEFENDANT SANCHEZ: Good morning, ma'am.

THE COURT: If you could raise your right hand so you can be sworn.

(Defendant sworn)

DEFENDANT SANCHEZ: Yes, I do.

THE COURT: All right, thank you.

Counsel, any doubt as to your client's competency?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: All right. Does he have a copy of the indictment there in front of you?

MR. RODRIGUEZ: Yes, Your Honor.

THE COURT: Yes, good.

Mr. Sanchez, look at that indictment right now.

DEFENDANT SANCHEZ: Yes, ma'am.
THE COURT: Have you seen it before?
DEFENDANT SANCHEZ: I saw it when I came and saw you last Thursday or Wednesday.
THE COURT: Yes, at your initial appearance. You remember that. And you're charged -- you see by looking at the indictment, you're charged with felon in possession of a firearm. Do you understand that?
DEFENDANT SANCHEZ: I understand what I'm being charged with.
THE COURT: Yes, good. That's all I'm asking you. You are charged with felon in possession of a firearm. It's in Count 1 of the indictment. Do you understand that?
DEFENDANT SANCHEZ: Yes, ma'am.
THE COURT: Okay. The, counsel, did you wish to enter a plea on your client's behalf at this time?
MR. RODRIGUEZ: Yes, Your Honor, not guilty.
THE COURT: Okay. A not guilty plea will be entered for Mr. Sanchez with respect to Count 1 of the indictment.
Now, we have -- at your initial appearance the Government opposed a bond being set for you. They made a motion for detention. We're going to have a hearing now on the issue of bond. Do you understand?
DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. You may proceed.
MR. PONDER: Your Honor, the Government would call Detective Clancy.
(Witness sworn)
THE WITNESS: Yes.
MR. PONDER: This is a preliminary matter, Your Honor. I would ask the Court to judicially note the indictment in this cause.
THE COURT: Yes.
MR. PONDER: And the fact of finding probable cause.
THE COURT: Pardon me.
MR. PONDER: And the finding of probable cause.
THE COURT: Yes, yes. The grand jury found probable cause when they returned the indictment, as a matter of law. So, yes.
MR. PONDER: And I realize we're not here on the prelim, but just for the record.
THE COURT: Yes, yes.
MR. PONDER: And I would also -- it's my understanding the Court will take into account the factual summaries in the Pretrial Services report?
THE COURT: Yes, it is the practice of the Court to take judicial notice of factual information in the Pretrial report. Does the Government have any objections to any of the

facts?

MR. PONDER: No, Your Honor.

THE COURT: No. Does the defendant?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: All right.

MR. PONDER: May I proceed, Your Honor?

THE COURT: Yes, sir.

DIRECT EXAMINATION OF MARK CLANCY

BY MR. PONDER:

Q Would you state your name and occupation, please, sir?

A My name is Mark Clancy. I'm a detective with the San Antonio Police Department's Intelligence Unit.

Q And are you one of the officers or agents assigned to the case of United States of America versus Andres Sanchez?

A Yes, sir.

Q And you see Mr. Sanchez in the courtroom today?

A Yes, I do.

Q And would you point him out and identify him for the record?

A He's wearing a black shirt.

Q And are you familiar with the facts and circumstances --

THE COURT: The record may reflect that the witness has identified the accused. Thank you.

BY MR. PONDER:

Q Are you familiar with the facts and circumstances

surrounding the charge against Mr. Sanchez?
A Yes, sir.
Q All right. Just briefly -- on December the 22nd of 2012, was Mr. Sanchez arrested by officers of the San Antonio Police Department?
A Yes, he was.
Q And where was he arrested, if you know?
A I don't recall the exact location. It was on the southwest.
Q Was he in a vehicle?
A Yes, he was in a 2004 Cadillac Escalade.
Q All right. Was that in the vicinity of the El Michacano Restaurant?
A Yes, sir.
Q Okay. And was he stopped -- what was he stopped for?
A He was stopped for a traffic violation.
Q Was that the failure to stop, failure to signal leaving a private drive and illegal lighting in the wheel rims?
A Yes, sir, I believe so.
Q I'm not familiar with that last one. Is that -- does he have lights in his rims and his tires?
A He has lights all over the vehicle. They are circular in nature. He has two toggle switches inside the vehicle that he can activate.
Q And were these -- were they on at the time?

A I wasn’t there at the exact stop so I’m not sure. I believe the arresting officers reported that they were on.
Q Okay. After they stopped Mr. Sanchez, did the officers smell anything?
A There was -- I’m not real sure on that. There was some marijuana, I believe in plain view, along with some cocaine in the vehicle.
Q Okay. All right. Now, are you familiar with any statements that he made at that time concerning being wanted for murder?
A When officers initially did a warrant check right after they initiated the traffic stop, a hit, a TCI/NCIC hit came out with a subject that was wanted for murder with a similar name. Anytime that you run a check, if there is any type of similarities that are close it will kick back just in case the individual is giving false identifiers. It was later determined that it was not him active on a murder warrant.
Q Okay. But, at any rate, he was asked to get out of the vehicle, is that correct?
A I believe so.
Q And they found additional cocaine and marijuana at that time?
A Yes, sir.
Q Was Mr. Sanchez -- did he make any statements concerning any gang membership?

A He was documented -- he admitted to being a HPL, Texas prison gang member, Herminos Pistolero Latino.
Q Okay. All right. And was there an inventory search of the vehicle conducted?
A Yes.
Q And did the officers find anything?
A Yes.
Q What did they find?
A They found a handgun in his vehicle.
Q Was that a Glock Model 22.40 caliber?
A Yes, sir.
Q All right. Was there also a magazine?
A Yes.
Q All right. With 15 rounds in it?
A I believe so.
Q Okay. And are you aware that Mr. Sanchez, or do you have information that he was convicted of felony offenses?
A Yes, sir.
Q All right. Well, let's see. Apparently there is at least one, and I think, according to the Pretrial Services, there may be two, is that correct?
A Yes.
Q All right. Was he interviewed concerning the gun?
A Yes, he was.
Q Did he admit ownership of the gun?

A He admitted to possessing it.
Q Okay. All right. He didn't own it, he just possessed it?
A Yes. I believe he stated he got it off the streets, bought it off the street.
Q Okay. But he's the one that purchased the gun?
A Yes.
Q All right. And did he admit that he -- or did he make any statements concerning whether he knew he shouldn't possess a gun?
A Yes, he did. He said that he carried a gun for protection because while he was in federal prison he was stabbed by other rival gang members, and once he was released he said that he was scared and he carried that gun for protection.
Q And as a detective in the intelligence unit of the San Antonio Police Department, do you all keep up with prison gangs here in town?
A Yes, sir.
Q All right. And are you familiar with at least the information that's been provided by sources of information concerning his rank in this HPL?
A Yes. He is a high-ranking HPL Texas prison gang member.
MR. PONDER: I'll pass the witness, Your Honor.
THE COURT: Where was the gun found?

THE WITNESS: The gun was found inside the engine compartment of the Escalade underneath the hood.

THE COURT: Thank you. And was it loaded or was just the magazine was there?

THE WITNESS: Yes, it was loaded.

THE COURT: So, it was a fully-loaded Glock?

THE WITNESS: I'm not sure if there was one in the chamber but it was a fully-loaded magazine.

THE COURT: Okay. Thank you.

MR. PONDER: I'll pass the witness, Your Honor.

THE COURT: Thank you.

MR. RODRIGUEZ: I have no questions for this witness, Your Honor.

THE COURT: All right. You may step down. Thank you.

MR. PONDER: We have no further evidence, Your Honor.

THE COURT: All right.

MR. PONDER: We rest.

THE COURT: The Government rest at this point.

Any evidence for the defendant?

MR. RODRIGUEZ: I'd like to put on a witness, my client as a witness.

THE COURT: All right. Well, I'll let you do it, but I need to review some things and then I'll give you a

chance to talk with Mr. Sanchez before he actually takes the stand.

Mr. Sanchez, you have a right to testify if you want to, okay. So, I'm not your lawyer and I'm not giving you advice one way or the other, but I have to review something with you; because if you testify you're going to be waiving some constitutional rights and the record has to be clear that it's a knowing, intentional, voluntary waiver of rights. That you know what you're doing, you understand your rights and you're giving them up. And in order for that to be clear I have to review this with you on the record, and then I'm going to give you a little chance to talk with your lawyer about this matter. And then if you decide you want to take the witness stand you'll be able to take the stand. Do you understand what I've said so far, sir?

DEFENDANT SANCHEZ: Yes, you're telling me that if I speak up that I lose all my constitutional rights.

THE COURT: No, I didn't say all your constitutional rights. I said you'll be waiving some rights.

DEFENDANT SANCHEZ: Can you --

THE COURT: Well, I'm going to get into it. All I asked you was, did you understand what I said?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay, good. I'm going to go step-by-step and I'm going to ask you did you understand what I said,

and then that isn't necessarily all I'm going to say, sir, okay.

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: So let's just go step-by-step because that way the record is clear, all right.

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: So, you have the right to testify. And, if you testify you'll be giving up some constitutional rights. Do you understand what I've said?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Now, you have a right to remain silent. When you appeared last week on the initial appearance, you know, I told you you have a right to remain silent. That means that under our system the Government is required to prove your guilt of the offense beyond a reasonable doubt. You don't have to prove anything. You can just put the Government to its burden of proof. You can remain silent. Do you understand?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. If you do testify, you know, you're going to be under oath. Do you understand that?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. And then anything you say can and will be used against you later in court. Do you understand?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. So, you'll be giving up that right to remain silent. You'll be giving up your right to just put the Government to its burden of proof and require them to prove you're guilty because you'll be saying things. And anything you say can be used against you later. Do you understand what I've said?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Then when you take -- you have a right, of course, to be represented by a lawyer. You have your lawyer here. And, you know, your lawyer will be asking you certain questions, and then the Government is going to ask you questions and you're not going to be able to, you know, stop and confer with your lawyer at any point. You're going to be under oath. You're just going to need to answer the questions. Do you understand?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: So, in a way, it effects your right to be represented by a lawyer, as well. Do you understand?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Now, I mean, you'll still be represented by the lawyer through the whole thing, but it's not the same as now. Whereas, if you told me, oh, gee, I want to talk to my lawyer for a little I'd let you privately confer. And, you know, it's different when you're testifying.

Do you understand what I'm trying to tell you?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Now, I don't know what you're going to testify to. I don't need to know. I mean, I'll hear it if and when you decide to testify. But, you know, you may be thinking, gee, I can testify. And as long as I don't testify about the essential elements of the offense, you're not testifying that I was previously convicted of a crime punishable by a term of imprisonment of one year, that I did possess this specifically described Glock on the particular day in question, as long as I don't, you know, I don't touch on interstate commerce that the Glock was presumably made in another state and shipped to Texas, which is probably how the Government is going to prove interstate commerce. As long as I don't touch upon any of those things, well then, I can testify and, you know, I might be okay you might be thinking to yourself.

But if you are found guilty in this case, you go to trial and you are found guilty or if you decide to plead guilty later on, you're going to have a sentencing hearing. And, at the sentence hearing all sorts of things can be used against you, all right.

Also, if you go to trial and you, for some reason, decide you want to testify at your trial, the transcript of this hearing will be used and be available, I don't know if it

will be used, but it's available and it could be used to cross examine you and impeach you, all right.

So, what you're going to testify to here, you know, I can't tell you it's not going to have any effect, given if it's about, you know, your two children or something, or where you live. I don't know that. I don't know that it's not going to be used against you in some way later on, okay. You assume the risk of it when you testify. Do you understand what I'm saying?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Now, I don't know what you're going to testify to, but in a minute now I'm going to give you a minute to confer with your lawyer. You and your lawyer will discuss it. I mean, sometimes the Government will agree to accept proffers. You know, I don't know if you've even explored this here for what the matter is. You have a chance to talk with Mr. Ponder briefly. But I'm willing to entertain that. That's just sort of eliminates this issue for you, sir. You know, immediate issue. Although, you know, you're still representing that the things included in the proffer are correct, but it's not quite the same as testifying.

I'll give you a minute to talk about all these matters with your lawyer. Do you understand?

DEFENDANT SANCHEZ: Yes, ma'am.

THE COURT: Okay. Anything further you would like

me to review at this time, counsel?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: Okay. Thanks. Then we're just going to be off the record for a minute. If you want to talk to Mr. Ponder, he's right there.

MR. RODRIGUEZ: Thank you, Judge.

THE COURT: Okay.

(Off the record while counsel and client confer)

THE COURT: We're on the record, counsel. Thank you.

MR. RODRIGUEZ: My client wishes not to testify.

THE COURT: Okay. Is there anything about a proffer that you would want to make?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: No, okay. Defense rest?

MR. RODRIGUEZ: Yes.

THE COURT: All right. The Government closes. Defense closes?

MR. RODRIGUEZ: Defense closes.

THE COURT: All right. You may argue, sir.

MR. PONDER: Your Honor, I think, yeah, just briefly to argue the strength of the case. I think there is a strong likelihood of conviction in this case based upon the position of the firearm, his statements concerning it, and the fact that it was in the vehicle that he was driving. And we

would just offer that.

And then, of course, his criminal history shows that starting in 1990 all the way up to April 2nd of 2012, he’s had a long history of arrests, and being released on bond and having those bonds revoked, being put on probation and having those probations revoked, having two prior or two trips to the federal Bureau of Prisons. Pretrial Service -- not Pretrial -- supervised released and having that revoked.

At least, I know on the first felony back in -- he was revoked in September of ‘04 and then again in September of ‘10, of 2010, he was revoked. And on his last felony federal conviction he was also revoked on that. I think that was at the same time as that last one on his first felony federal conviction.

Now, which demonstrates that, you know, there have been attempts in the past to put this defendant under forms of supervision while either pending charges or on post-conviction supervision. And on several of those occasions, at least it appears to be almost all of them, he’s failed to live up to those conditions and has had to have either his bond revoked or his supervision revoked. So, I think he has established a history of simply being a repeat violator of those terms.

I would also note that, you know, he is -- it would appear to be subject to perhaps being an armed career offender with the two prior convictions, who prior drug convictions.

It's not my case so I haven't researched everything to that, but he's looking at significant prison time. And we see no basis for the Court setting any convictions that would either assure the safety of the community or his appearance in court.

THE COURT: All right, sir. Thank you.

Counsel?

MR. RODRIGUEZ: Your Honor, as the Pretrial Services report correctly reflects, Mr. Sanchez is employed. He does run a barber shop. He does have employees. He does make payroll and he is contributing to society in that respect.

We would ask that bond be considered.

THE COURT: Yes, sir. Thank you, sir.

Anything further for the Government?

MR. PONDER: No, Your Honor.

THE COURT: Anything further, Mr. Rodriguez?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: Okay. Thank you.

Well, Mr. Sanchez, I'm not going to set a bond for you today. I know from looking at your criminal history that you have had bonds set for you before in state court, and I also know you have prior federal convictions. And your prior federal convictions occurred after the effective date of the Bail Reform Act, which is the law that applies to this hearing, the federal Bail Reform Act.

The federal Bail Reform Act is not the same law that applies when state judges set state bonds. When it is a state offense state law applies, all right. And this is not a state offense. It's a federal offense, so federal law is going to apply to bond.

And the federal Bail Reform Act gives the Government the right to make a motion for detention or oppose bond, and then also directs the Court to look at certain factors in determining whether bond should be set.

One of the factors is your past conduct on supervision. And so, here, you know, the fact that you're prior federal supervised releases were revoked unfortunately hurts you, sir. The Bail Reform Act directs the Court to look to conduct in the past on supervision, so I am directed to look at it. And there is just, you know, it's just a fact here, sir, that your past conduct on supervision resulted in revocations.

Now, you also had some bond forfeitures and failures to appear in your state cases, for example, motions to revoke in your state cases. And, of course, the Court looks at everything. But, in particular what I'm looking at is your past conduct on federal supervision.

The strength of the Government's case appears to be sufficiently strong to support a determination of no bond conditions at this time. That isn't saying you're going to be

found guilty. It’s not a finding of guilt. But the Bail Reform Act does require the Court to look at the nature and circumstances of the offense, and so on. And so, it’s a felon in possession offense. The Government has to prove essentially the language, you know, established in Count 1, it’s a pretty straightforward case. And so, in the sense of what the elements are, what they have to prove, what was proffered to the Court and presented to the Court during the testimony of the detective indicates that the weight of the evidence is sufficiently strong to support an action of detention or no bond.

Now, I’ll enter a written order that will make certain findings and conclusions under the law. It will be filed. The written order will mention things that I haven’t mentioned in court. It’s going to need to mention the gang affiliation, for example. There will be other factors that are mentioned in the order. I don’t mention them all here. I mentioned to you what I think might be the most important points and ones that pertain to the actual requirements of the federal proceeding as opposed to a state proceeding, which might be the most important ones for me to review.

Anything further for the Government?

MR. PONDER: No, Your Honor.

THE COURT: Anything further, counsel?

MR. RODRIGUEZ: No, Your Honor.

THE COURT: We’re in recess. Thank you.

(These proceedings concluded at 10:32 a.m.)

* * * * *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the previous-entitled matter.

Jeannine Davis /s/
Transcriber

July 3, 2013
Date

SA-1190
Invoice No.